María Seda Viuda de Ortiz, peticionaria, *v.* Corte de Distrito de Mayagüez, Hon. Rodolfo Ramírez Pabón, Juez, demandada.

Núm. 1577.—*Sometido:* Diciembre 18, 1944. *Resuelto:* Enero 15, 1945.

*Miguel A. García Méndez* y *Carlos García Méndez,* abogados de la peticionaria; *Gilberto López de Victoria,* abogado del Juez demandado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Artemio Ortiz Pérez falleció el primero de febrero de 1944 bajo testamento abierto otorgado el 23 de junio de 1938. En su testamento desheredó a su único descendiente, su hija Georgina Ortiz Zapata, habida en su primer matrimonio, e instituyó como su única heredera a su segunda esposa, María Seda. El 11 de marzo de 1944 su heredera testamentaria y su citada hija formalizaron en documento privado un contrato de transacción que literalmente dice:

"Contrato de Transacción. Comparecen: de una parte, doña María Seda vda. de Ortiz, mayor de edad, viuda, propietaria y vecina de Lajas, Puerto Rico; de la otra parte, Georgina Ortiz Zapata, mayor de edad, casada con Antonio Cruz, de oficios domésticos y vecina de San Juan, Puerto Rico, y de común acuerdo exponen:

"1. Que la compareciente de la primera parte es viuda de don Artemio Ortiz Pérez y la compareciente de la segunda parte es hija del matrimonio que en primeras nupcias celebrara el fenecido Artemio Ortiz Pérez con la señora Eduarda Zapata.

"2. Que a pesar de ambas partes tener conocimiento del testamento otorgado por don Artemio Ortiz Pérez ante el notario Leo Irizarry en 23 de junio de 1938 por escritura número cuarenta, ambas partes han decidido llegar al acuerdo que más adelante se expone con el propósito de evitar enojosos litigios y acciones judiciales.

"3. Que es convenio de las partes que una vez tasados los bienes dejados a su fallecimiento por el causante y deducidos de dichos bienes los que hubo el causante con carácter privativo, la cuota usufructuaria del cónyuge supérstite doña María Seda vda. de Ortiz, las deudas y bajas del capital inventariado y los gananciales correspondientes también al cónyuge supérstite pertenecerán a la compareciente Georgina Ortiz Zapata.

"4. Que a doña María Seda vda. de Ortiz le pertenecerán una vez hechas las deducciones correspondientes a las deudas de sociedad de gananciales y los bienes privativos de su fenecido esposo don Artemio Ortiz Pérez, la mitad del caudal hereditario y su cuota usufructuaria como cónyuge supérstite.

"5. Que los bienes privativos al difunto Artemio Ortiz Pérez corresponderán a su hija la compareciente de la segunda parte Georgina Ortiz Zapata.

"6. Las partes aceptan este documento por encontrarlo redactado de acuerdo con su voluntad y deseo.

"En San Germán, Puerto Rico, a once de marzo de mil novecientos cuarenta y cuatro.

"(Firmados) María Seda Vda. de Ortiz, Georgina Ortiz Zapata, Antonio Cruz.

"Aff. número 1131. Suscrito ante mí por doña María Seda vda. de Ortiz, Georgina Ortiz Zapata y Antonio Cruz, de las circunstancias personales arriba expresadas, a quienes doy fe de conocer hoy personalmente en San Germán, Puerto Rico, a once de marzo de mil novecientos cuarenta y cuatro.

"(Firmado) Luisa María Capó. (Hay un sello de rentas internas de veinticinco centavos y estampado el notarial que dice: 'Luisa María Capó, Abogado-Notario de Puerto Rico.')"

Después de otorgado este contrato, Georgina Ortiz Zapata solicitó en la corte inferior la administración judicial de los bienes relictos por su padre. Alegó que Artemio Ortiz Pérez había fallecido, que ella era su hija legítima y que, aunque había sido·desheredada por su padre, estaba en condiciones de impugnar la desheredación. Refiriéndose al contrato de transacción, alegó "que *además de la peticionaria Georgina Ortiz Zapata,* la única persona con derecho a sucesión en los bienes del finado . . . es su viuda doña María Seda, cuyo domicilio es Lajas, Puerto Rico." (Bastardillas nuestras.) Alegó además que el finado dejó bienes sujetos a partición, expresando su valor, naturaleza y situación, y que el testador no hizo nombramiento de albacea ni de administrador ni de contador partidor de sus bienes en el ameritado testamento. Alegó por información y creencia la inexistencia de deudas, y terminó con súplica de que se nombrase un administrador judicial, proponiéndose a sí misma para el cargo "por ser la persona de mayor interés en la herencia."

Radicó la viuda una moción solicitando se desestimase la petición de administración judical por:

1. Carecer Georgina Ortiz Zapata de personalidad para solicitar la administración judicial, por no ser heredera forzosa;

2. No ser ella una de las personas que con arreglo a la ley pueden solicitar la administración judicial;

3. No proceder la administración judicial cuando existe testamento, y

4. Pertenecer a la heredera testamentaria todos los bienes de la herencia.

Por estipulación de las partes, previa aprobación de la corte, se procedió a discutir las cuestiones de derecho planteadas por la opositora, acordándose posponer la vista del caso en su fondo para después de haber sido resueltas las cuestiones de derecho. Siguiendo el orden lógico, la primera cuestión que resolvió la corte de distrito fué si Georgina Ortiz Zapata tenía capacidad legal para solicitar el nombramiento de administrador judicial.

El artículo 556 del Código de Enjuiciamiento Civil, invocado por la corte inferior, determina quiénes son las personas con capacidad legal para solicitar la administración judicial de los bienes de un finado, a saber: (a) el albacea testamentario, y en caso de que el testador no lo hubiese nombrado o no dejase testamento válido, (b) el cónyuge supérstite, o (c) *cualquier heredero forzoso,* o (d) cualquier persona que se presente como heredero testamentario, o (e) legatario, o (f) cualquier acreedor con título escrito no asegurado.

Resolvió la corte que a virtud del contrato de transacción la desheredación había quedado sin efecto y que la peticionaria era por consiguiente una heredera forzosa, y como tal tenía capacidad para solicitar la administración judicial. Esa conclusión fué el resultado de los siguientes razonamientos:

"Si bien es verdad que de acuerdo con el testamento a que se hace referencia tanto en la petición como en la oposición, la peticionaria fué desheredada por su padre el finado Artemio Ortiz Pérez y el testamento, es prima facie válido, no es menos cierto que a virtud de un contrato de transacción celebrado entre la peticionaria Georgina Ortiz Zapata y la opositora María Seda vda. de Ortiz, esta

última instituída única y universal heredera en dicho testamento, *se convino expresamente en dejarlo sin efecto en su totalidad, restituyéndose a virtud de ello la aquí peticionaria en todos sus derechos y acciones en relación con los bienes dejados a su fallecimiento por el causante como si tal testamento no hubiese existido.*

"Dicho contrato de transacción fué transcrito literalmente en la petición, se halla suscrito ante notario y no ha sido atacado por la opositora. Tal contrato así suscrito tiene para las partes, de acuerdo con las disposiciones del artículo 1715 del Código Civil, la autoridad de cosa juzgada. . . .

"    "    "    "    "    "    "    "

"*Es evidente, pues, que habiendo este documento de transacción restituído a la peticionaria en todos sus derechos de heredera forzosa,* ésta tiene un derecho claro de acuerdo con el artículo 556 del Código de Enjuiciamiento Civil de Puerto Rico a que se ha hecho referencia, a solicitar la administración judicial de los bienes del finado Artemio Ortiz Pérez.

"De resolver esta corte lo contrario, se estaría forzando a la peticionaria a incoar un procedimiento de nulidad de testamento a todas luces innecesario y académico, ya que la sentencia que pudiera recaer en el mismo no dispondría otra cosa que lo expresamente convenido por las partes en el contrato de transacción antes mencionado." (Bastardillas nuestras.)

Solicitó la viuda la reconsideración, y la corte al denegarla entre otras cosas dijo:

"Para los efectos de este convenio [el contrato de transacción] no era necesario atacar o negar la validez del testamento, ya que meramente, según se desprende de las alegacions, *se convino prescindir de sus disposiciones* para no dar lugar a acciones judiciales entre la peticionaria y la opositora." (Bastardillas nuestras.)

Ex profeso hemos transcrito literalmente el contrato de transación porque del mismo surge el error manifiesto en que incurre la corte de distrito al asegurar que a virtud de dicho contrato se convino expresamente en dejar sin efecto en su totalidad el testamento y que consecuentemente Georgina Ortiz Zapata fué restituída en todos sus derechos y acciones sobre los bienes relictos por su padre y

en todos sus derechos de heredera forzosa como si tal testamento no hubiese existido. Pero aparte de que María Seda viuda de Ortiz no podía legalmente convenir tal cosa, como veremos más adelante, lo que ella realmente convino fué ceder los bienes que le correspondían como heredera voluntaria de su esposo, reteniendo ella su participación en los gananciales y el usufructo que le concede la ley. En ninguna parte del contrato se convino en dejar sin efecto el testamento y considerarlo, como dice el juez de la corte inferior, como si nunca hubiera existido. Ni mucho menos se convino en restituir a la hija desheredada en el *status* de heredera forzosa.

Tampoco puede argüirse que al ceder María Seda viuda de Ortiz a Georgina Ortiz Zapata sus derechos sobre los bienes de la herencia, implícitamente dejó sin efecto la desheredación y restituyó a la citada hija en todos sus derechos de heredera forzosa. El testamento es, como dice Manresa, fundamento y raíz de la sucesión testada y ley para los herederos, reguladora de la sucesión después de la muerte del causante. Muerto éste, su viuda, como heredera voluntaria, adquirió desde ese momento el dominio de los bienes hereditarios y consecuentemente quedó capacitada para enajenarlos. En efecto, mediante el contrato de transacción cedió a Georgina Ortiz Zapata su derecho a los bienes de la herencia con excepción del usufructo vidual que conservó. No cedió ella, conforme aparece del contrato, sus derechos como heredera, ni podía cederlos, pues tales derechos no llegan hasta el extremo de poder subrogar en su condición de heredera a una persona que no sólo no fué instituída como tal, si que fué desheredada por el testador. Esto es así porque de conformidad con el artículo 619 del Código Civil, la formación del testamento, como acto personalísimo que es, no puede delegarse en todo ni en parte, ni puede dejarse al arbitrio de un tercero la subsistencia del nombramiento de he-

rederos o legatarios.[1]   A este efecto dice Scaevola, Código
Civil, tomo XII, pág. 185:

"Diversos son los motivos que explican la disposición del artículo
669 y la del 670, constituyendo el 671 una excepción de lo que el
último ordena; pero convienen, por fin, los tres en la idea y nece-
sidad de que la institución testamentaria esté otorgada exclusivamente
por el testador, *sin que terceras personas, ya sean extrañas a aquélla
o ya favorecidas en la herencia,* compartan las atribuciones que a un
solo individuo le son debidas por las leyes." (Bastardillas nuestras.)

Evidentemente María Seda vda. de Ortiz tiene perfecto
derecho a renunciar la herencia, pero no tiene autoridad
para convenir que se prescinda del testamento y considerarlo
como si no hubiera existido.  Si se considerase el testamento
como inexistente, ¿de dónde surgiría su facultad para dis-
poner de los bienes hereditarios a favor de Georgina Ortiz?

Tampoco convino la heredera instituída en dejar sin efecto
la desheredación, pero aunque lo hubiera convenido habría
sido ineficaz.  El dejar sin efecto la desheredación sólo puede
tener lugar mediante la reconciliación del ofensor y del ofen-
dido, Código Civil, artículo 781, o mediante pronunciamiento
judicial cuando la desheredación se hubiere hecho sin expre-
sión de causa o por causa cuya certeza, si fuere contradicha,
no se probare, o cuando la causa no fuese alguna de las es-
pecificadas por la ley.  El dejar sin efecto la desheredación
anula la institución de herederos solamente en cuanto perju-
dique al desheredado, pero valdrán los legados, mejoras y
demás disposiciones testamentarias en lo que no perjudiquen
a dicha legítima.  Código Civil, artículo 776.

En el presente caso el testador ni los tribunales han de-
jado sin efecto la desheredación.  Y la circunstancia de que
la desheredada tenga hijos, probado que fuere ese hecho en

---

[1] Este principio tiene su excepción en el art. 620, que dice:

"Podrá el testador encomendar a un tercero la distribución de las cantidades
que deje en general a clases determinadas, como a los parientes, a los pobres o
a los establecimientos de beneficencia, así como la elección de las personas o esta-
blecimientos a quienes aquéllas deban aplicarse."

la correspondiente acción judicial, sólo dará lugar a que éstos, en concurrencia con la heredera voluntaria, adquieran su derecho a la legítima que hubiera correspondido a su madre.

El argumento de que en un pleito incoado por la peticionaria la sentencia que pudiera recaer no dispondría otra cosa que lo expresamente convenido por las partes en el contrato de transacción, es insostenible, porque en dicho contrato la viuda, aún suponiendo que hubiera podido convenir en considerar como inexistente el testamento, no lo hizo. A lo más que podría ser compelida por sentencia sería a cumplir lo pactado en el contrato, o sea a trasmitir a Georgina Ortiz Zapata los bienes hereditarios con excepción de la cuota vidual. Tal sentencia no convertiría en manera alguna a Georgina Ortiz en heredera forzosa de su padre.

*Careciendo Georgina Ortiz Zapata de capacidad legal para solicitar la administración judicial, es errónea la resolución de 28 de junio de 1944 que declaró sin lugar la moción de desestimación radicada por María Seda viuda de Ortiz y también lo es la resolución de 5 de octubre de 1944 que denegó la reconsideración. Procede anularlas y devolver el caso a la corte inferior para que desestime la petición de Georgina Ortiz Zapata en la cual solicitó la administración judicial de los bienes relictos por Artemio Ortiz Pérez.*